# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA CLIPPINGER, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>AUDATEX NORTH AMERICA, INC., d/b/a AUDAEXPLORE, a Delaware Corporation<br><br>Defendants. | CASE NO.  2:20-cv-2501-TLP<br><br>JUDGE:     Thomas L. Parker<br><br>Complaint – Class Action<br>Jury Trial Demanded |

## MEMORANDUM OF DEFENDANT AUDATEX NORTH AMERICA, INC. IN SUPPORT OF ITS MOTION TO DISMISS

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ALLEGATIONS IN THE COMPLAINT ......................................................................... 2

III. LEGAL STANDARD........................................................................................................... 4

IV. ARGUMENT......................................................................................................................... 5

    A. Plaintiff Has Failed to State Either a Statutory or Common Law Claim for Inducement to Breach a Contract............................................................................. 5

        i. Clippinger does not allege that Audatex intended to induce a breach. ................................................................................................................ 6
        ii. Clippinger does not allege that Audatex acted maliciously. ....................... 9
        iii. Clippinger fails to allege that Audatex's actions were the proximate cause of a breach...................................................................... 10

    B. Plaintiff Fails to State a Claim Against Audatex for Declaratory Judgment........ 12

V. CONCLUSION................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 4, 5, 9

*Atchley v. RK Co.*,
  224 F.3d 537 (6th Cir. 2000) ................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 4, 9

*Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*,
  13 S.W.3d 343 (Tenn. Ct. App. 1999) ............................................................................. 5, 6

*Clippinger v State Farm Mutual Automobile Insurance Company*,
  Case No.: 2:20-cv-02482 (WD TN) ................................................................................ 1, 2

*Doe v. University of Dayton*,
  766 Fed.Appx 275 (6th Cir. 2019) ..................................................................................... 12

*Hale v. Ostrow*,
  166 S.W.3d 713 (Tenn. 2005) ............................................................................................ 10

*Jones v. Progressive Cas. Ins. Co.*,
  No. 16-CV-06941-JD, 2018 WL 4521919 (N.D. Cal. Sept. 19, 2018) ................................ 8

*Keith v. Aerus, LLC*,
  No. 2:09-CV-297, 2010 WL 3883434 (E.D. Tenn. Sept. 29, 2010) ..................................... 7

*Lee v. State Volunteer Mut. Ins. Co.*,
  No. E200203127COAR3CV, 2005 WL 123492 (Tenn. Ct. App. Jan. 21,
  2005) .............................................................................................................................. 8, 11

*Marshall Motor Homes Int'l, Inc. v. Newmar Corp.*,
  No. 3:01-CV-397, 2003 WL 23333579 (E.D. Tenn. Dec. 5, 2003) .................................. 6, 9

*Verble v. Morgan Stanley Smith Barney, LLC*,
  676 F. App'x 421 (6th Cir. 2017) ......................................................................................... 4

*Walker v. Allstate Prop. & Cas. Ins. Co.*,
  No. 2:19-CV-701-RDP, 2020 WL 1235626 (N.D. Ala. Mar. 10, 2020) ........................... 2, 7

*Williams v. Progressive Cty. Mut. Ins. Co.*,
  No. 17-CV-2282-AJB-BGS, 2019 WL 1418057 (S.D. Cal. Mar. 29, 2019) ........................ 8

*Wilson v. Delta Airlines, Inc.*,
  No. 2:09-CV-2687-JPM-DKV, 2010 WL 2836326 (W.D. Tenn. July 19,
  2010) ........................................................................................................................... 6, 8, 9

**Statutes**

28 U.S.C. § 2201 ............................................................................................................................12
Tenn. Code. Ann. § 47-50-109 .......................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................4
Tenn. Comp. R. & Regs. 0780-01-05-.02 .......................................................................................9
Tenn. Comp. R. & Regs. 0780-01-05-.09(c) ..................................................................................9

I.      **INTRODUCTION**

Although Audatex North America, Inc. ("Audatex") is the named defendant in this matter, the substantive allegations in Clippinger's complaint all concern plaintiff's relationship and dealings with her automobile insurance company, State Farm Mutual Automobile Insurance Company ("State Farm").[1] In her First Amended Complaint ("FAC") against Audatex, Clippinger alleges that (i) she has an automobile insurance contract with State Farm, (ii) after her car was damaged, she filed a claim with State Farm and her car was deemed a total loss, (iii) State Farm valued her vehicle and claim at $14,490 and paid her that amount, and (iv) State Farm's valuation of her claim violated both State Farm's contract with Clippinger and Tennessee regulations applicable to insurers. Audatex, for its part, has no relationship with Clippinger, contractual or otherwise, and is not, and is not alleged to be, an insurer.

Audatex's connection to Clippinger's allegations against State Farm is, at best, tenuous. Clippinger alleges that State Farm based its valuation of Clippinger's total loss claim on a market valuation report it obtained from Audatex. Given that plaintiff's insurance contract is with State Farm, not Audatex, Clippinger relies on a far less compelling legal claim against Audatex: Clippinger alleges that Audatex induced State Farm to breach its insurance contract with her. Tennessee recognizes two separate claims for inducement to breach a contract: common law "tortious interference," and the codification of this tort, "Inducement of Breach of Contract under Tennessee Code § 47-50-109." In her First Amended Complaint, Clippinger pleads both of these claims. The claims, which are essentially duplicative and require that plaintiff prove the same

---

[1] The motion of Audatex to consolidate this matter with the separate action Clippinger filed against State Farm, *Clippinger v State Farm Mutual Automobile Insurance Company*, Case No.: 2:20-cv-02482 (WD TN), also pending before this court, has been consented to by both Clippinger and State Farm but has not yet been acted on by the Court.

1

seven elements, fail for the same reasons. Clippinger does not allege any facts, let alone plausible facts, that Audatex (i) specifically intended to induce State Farm to breach its contract with Clippinger, (ii) acted maliciously, or (iii) proximately caused a breach of that contract.

Clippinger's third claim, for a declaratory judgment, is also insufficient as matter of law. Clippinger fails to assert a justiciable controversy because the declaration she seeks – concerning the duties of Tennessee insurers – would not affect any rights or obligations between Clippinger and Audatex, which is not, and is not alleged to be, an insurer. As set forth more fully below, Clippinger has failed to state a claim against Audatex and the Court should dismiss her claims with prejudice.[2]

## II.    ALLEGATIONS IN THE COMPLAINT[3]

Audatex is a company that provides data and software solutions to the automotive, collision repair and insurance industries. Its products include valuation reports and claims automation software which it licenses to insurers, including State Farm. FAC ¶ 15. Clippinger does not allege that Audatex is an insurance company or otherwise insures automobiles.

---

[2] To the extent relevant to this motion, the arguments and authority set forth in the separate motion to dismiss filed on behalf of State Farm in the related case of *Clippinger v. State Farm Mutual Automobile Insurance Co.*, No. 2:20-cv-02482 (the "State Farm Case") are hereby adopted. *See id.* Dkts. 25-26. An unopposed motion to consolidate that case with this one is pending before the Court. While generally adopting all relevant arguments, Audatex specifically adopts State Farm's argument that this matter should be dismissed or in the alternative stayed because Clippinger has failed to comply, or plead compliance, with the mandatory appraisal remedy in her contract with State Farm. If the Court grants State Farm's motion to dismiss, it must also dismiss the claims against Audatex as premature and potentially moot if the appraisal supports the amount paid by State Farm. *See, e.g., Walker v. Allstate Prop. & Cas. Ins. Co.*, No. 2:19-CV-701-RDP, 2020 WL 1235626, at *7 (N.D. Ala. Mar. 10, 2020) (under similar facts, after court dismissed claim against automobile insurance company as premature because plaintiff had not complied with contractual appraisal process, court dismissed plaintiff's claim for tortious interference with contract against information technology company as premature).

[3] Factual allegations in the First Amended Complaint are taken as true, as they must be, for the purposes of this Motion only.

Clippinger also does not allege facts establishing that Audatex otherwise has any independent duty to comply with Tennessee insurance law regarding the settlement of total loss claims. Nor does Clippinger allege that she or any other member of the putative class has any relationship, contractual or otherwise, with Audatex. Clippinger does not even allege that she or any other member of the putative class has ever been in contact with Audatex.

Clippinger does allege that she, and all members of the proposed class, are or have been covered under an automobile insurance contract with State Farm. FAC ¶ 23. Clippinger's insurance contract with State Farm provides coverage for the total loss of a vehicle, through which State Farm agrees to either replace the lost vehicle with one of like kind and quality or pay the insured its actual cash value. FAC ¶ 23.

In 2019, Clippinger owned a 2017 Dodge Grand Caravan SXT 2WD 4 door passenger van. FAC ¶ 48. In or around May 10, 2019, Clippinger's car was involved in a casualty event. FAC ¶ 48. Clippinger made a claim with State Farm for the damage to her vehicle, and State Farm deemed her vehicle a total loss. FAC ¶¶ 49-50. In response to Clippinger's claim, State Farm used its total loss settlement process to calculate a value for Clippinger's car. FAC ¶¶ 29, 51. State Farm valued Clippinger's total loss claim at $14,490.00, and paid Clippinger that amount. FAC ¶ 51.

Clippinger alleges that State Farm's valuation was based on a market valuation report that State Farm obtained from Audatex pursuant to a contract under which State Farm acquired a license to obtain such reports from Audatex. FAC ¶ 51. Clippinger also claims that State Farm's reliance on the Audatex market valuation reports is part of State Farm's "general business practice." FAC ¶ 30. Clippinger further alleges that Audatex's market valuation report listed the asking prices of four comparable vehicles and applied a "Typical Negotiation Adjustment" of

approximately 8.5% to the *asking prices* (not the sales prices) of all four vehicles without itemizing or explaining the basis of the adjustment or how the value of the deduction was determined. FAC ¶ 56.

Clippinger alleges that State Farm's use of the Audatex market valuation report to value Clippinger's loss, including its use of the Typical Negotiation Adjustment, violates State Farm's insurance policy with her. FAC ¶ 44. Specifically, Clippinger alleges that the policy requires State Farm to pay the actual cash value of a loss vehicle when adjusting total loss claims and that the application of an approximately 8.5% Typical Negotiation Adjustment reduction to the *asking prices* (not the sales prices) of those vehicles breaches this obligation. FAC ¶ 2. Clippinger further alleges that State Farm's contractual obligations are consistent with Tennessee law, which also obligates State Farm to pay the actual cash value of an insured total loss. FAC ¶ 2. Clippinger alleges that State Farm systemically fails to offer and pay the actual cash value due to insureds. FAC ¶ 27.

### III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). This requires more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl.*, 550 U.S. at 555. "Conclusory allegations are not entitled to the assumption of truth." *Verble v. Morgan Stanley Smith Barney, LLC*, 676 F. App'x 421, 424 (6th Cir. 2017). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotes omitted).

IV.  **ARGUMENT**

  A.  **Plaintiff Has Failed to State Either a Statutory or Common Law Claim for Inducement to Breach a Contract**

Tennessee law provides for both a common law claim of "tortious interference with performance of contract" and a statutory claim of "inducement of breach of contract" (T.C.A. § 47-50-109). *See Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999) (noting that "Tennessee Code Annotated section 47–50–109 is simply declaratory of the common law except as to damages," and that the "common law remedy continues to be viable, coexistive with this statutory treble (multiple) damage statute."); *see also Atchley v. RK Co.*, 224 F.3d 537, 540 (6th Cir. 2000) ("Tennessee courts acknowledge that T.C.A. § 47–50–109 merely codifies Tennessee common law regarding procurement of a breach of contract, except to the extent that the statute allows for treble damages.").

In her First Amended Complaint, Clippinger brings both a claim for "Inducement of Breach of Contract – T.C.A. § 47-50-109 (First Cause of Action) and "Tortious Interference with the Performance of Contract" (Second Cause of Action). The seven elements required to prove either cause of action are the same. *See Atchley*, 224 F.3d at 540. The elements are:

  (1) there was a legal contract;
  (2) the defendant knew of the existence of the contract;
  (3) the defendant intended to induce a breach of the contract;
  (4) the defendant acted maliciously;
  (5) the contract was actually breached;
  (6) the defendant's acts were the proximate cause of the breach; and
  (7) damages resulted from the breach.

*Wilson v. Delta Airlines, Inc.*, No. 2:09-CV-2687-JPM-DKV, 2010 WL 2836326, at *7 (W.D. Tenn. July 19, 2010) (citing *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn.Ct.App.1999)). "Tennessee courts indicate that the burden of persuasion for proving a violation of T.C.A. § 47–50–109 is somewhat elevated, requiring a 'clear showing' of the necessary elements, including malice." *Marshall Motor Homes Int'l, Inc. v. Newmar Corp.*, No. 3:01-CV-397, 2003 WL 23333579, at *30 (E.D. Tenn. Dec. 5, 2003). Here, Clippinger fails to assert a plausible set of facts alleging that Audatex (i) intended to induce a breach of the contract, (ii) acted maliciously, or (iii) proximately caused the breach.

                *i.*        *Clippinger does not allege that Audatex intended to induce a breach.*

Clippinger does not plausibly allege that Audatex *intended* to induce a breach of the contract between her and State Farm. Rather, Clippinger alleges only that Audatex, a data analysis company, contracted with State Farm, an insurer, to provide it with valuation reports and claims automation software, and that State Farm based its valuation of Clippinger's totaled vehicle, at least in part, on a valuation report it received from Audatex. *See* FAC ¶¶ 29, 51 ("Audatex has contracted with State Farm to provide vehicle valuation reports . . . ."; "State Farm's valuation was based on a market valuation report obtained from Audatex using the AMDV software program."). But merely alleging that Audatex performed its contract with State Farm does not provide the substance required to show that Audatex *intended* to induce a breach of the separate and independent contract between Clippinger and State Farm.

Indeed, Clippinger's paucity of plausible facts is especially vulnerable to dismissal under Tennessee law, which requires more substance to plausibly allege intent to induce a breach of the contract. Under Tennessee law, even alleging that a defendant knows (i) of plaintiff's contract and (ii) that its actions would result in a breach of that contract is not enough to plausibly allege

6

intent to induce a breach of contract. *See Keith v. Aerus, LLC*, No. 2:09-CV-297, 2010 WL 3883434, at *5 (E.D. Tenn. Sept. 29, 2010) ("An allegation that defendants had knowledge of the contract and knowledge that their actions would result in a breach of contract is an insufficient factual allegation to establish both the knowledge and intent elements of the tort."); *id.* (dismissing inducement to breach a contract claim where "[n]o factual allegations [were] made which establish the intent … to induce a breach of … contract").

At most, Clippinger alleges that through their contractual relationship, Audatex "enable[d]" State Farm's "unlawful and systemic practice" of failing to offer and pay the actual cash value due to insureds. FAC ¶¶ 27-28. As other courts have found, however, such allegations do not support a claim for inducement to breach a contract.

In *Walker v. Allstate Prop. & Cas. Ins. Co.*, No. 2:19-CV-701-RDP, 2020 WL 1235626, at *7 (N.D. Ala. Mar. 10, 2020), the Northern District of Alabama dismissed a plaintiff-insured's tortious interference with contract claim against an information technology company ("CCC" – an Audatex competitor). Although the *Walker* Court dismissed the plaintiff's tortious interference claim because it was premature[4] (*id.*), it went on to conclude that even if plaintiff's claim was not premature, plaintiff had failed to allege that CCC intentionally interfered with the policy. *Id.* Like Clippinger here, the plaintiff in *Walker* merely alleged that CCC "enabled" the insurance company's actions – an allegation insufficient to support a tortious interference claim. *Compare id.* ("Plaintiff alleges that CCC provided Allstate with inaccurate market valuation reports for the specific purpose of ***enabling*** Allstate to underpay total-loss claims. However,

---

[4] In *Walker*, before the court analyzed the plaintiff's tortious interference claim, it granted the defendant-insurer's motion to dismiss and compel appraisal. *Walker*, 2020 WL 1235626 at *6. As noted above, if the Court grants State Farm's motion to dismiss in the State Farm Case, Clippinger's claims against Audatex will likewise be meritless.

'*enabling*' Allstate to use the market valuation reports is not the same as CCC intentionally interfering with the Policy.") (emphasis added) *with* FAC ¶ 28 ("Audatex *enables* [State Farm's] unlawful and systemic practice . . ..") (emphasis added).

The Northern District of California also rejected a claim for tortious interference that is essentially indistinguishable from those asserted in both *Walker* and here. There, the court concluded the plaintiff-insured failed to plausibly allege that the information technology company in that case intended to disrupt his policy with the defendant-insurance company. *See Jones v. Progressive Cas. Ins. Co.*, No. 16-CV-06941-JD, 2018 WL 4521919 (N.D. Cal. Sept. 19, 2018) (dismissing similar tortious inference with contract claim against another information technology company – and Audatex competitor – Mitchell, because even if Mitchell's reports were misleading, no plausible facts were alleged supporting the notion that Mitchell intended to disrupt plaintiff's policy with his insurer or knew that interference was likely to occur). Because Clippinger, like the plaintiffs in *Walker* and *Jones,* did not plead a plausible set of facts that Audatex intended to interfere with her insurance policy, her claim cannot survive.[5]

Clippinger's claims do nothing more than "simply parrot" the element of intent. *Wilson*, 2010 WL 2836326 at *7 ("A complaint for tortious interference with a contract must do more than simply parrot the legal elements of the cause of action.") (citing *Lee v. State Volunteer Mut. Ins. Co.*, No. E200203127COAR3CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005)).

---

[5] *Jones*, *Walker*, and this case are, in this regard, distinguishable from the decision in *Williams v. Progressive Cty. Mut. Ins. Co.*, No. 17-CV-2282-AJB-BGS, 2019 WL 1418057 (S.D. Cal. Mar. 29, 2019). While the *Williams* court allowed an intentional interference claim to proceed against Mitchell in the face of a motion to dismiss, Clippinger, like Jones and Walker, but unlike Williams, fails to allege that Audatex acted to intentionally induce a breach between State Farm and Clippinger. Williams, on the other hand, affirmatively alleged that "Mitchell's [total loss valuation] system was intentionally designed to disrupt Progressive's obligation under the Policy to pay actual cash value." Williams Cmplt ¶ 91. *Jones* and *Walker*, not *Williams*, are factually far more similar to our case, and are the more persuasive authorities.

Under *Iqbal/Twombly*, such a conclusory allegation does not suffice, and Clippinger's First Amended Complaint should be dismissed. *Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

        *ii.*    *Clippinger does not allege that Audatex acted maliciously.*

Clippinger's claim for inducement of breach of contract also fails because Clippinger does not allege that Audatex "acted maliciously." *Wilson*, 2010 WL 2836326 at *7. In fact, Clippinger fails to even *conclude* that Audatex acted maliciously in its causes of action for inducement of breach of contract. *See* FAC ¶¶ 67-80. Further, none of the facts that Clippinger does plead suggest, let alone directly allege, that Audatex acted maliciously.

For the purposes of inducement to breach a contract under Tennessee law, malice is described as a "willful violation of a known right." *Marshall Motor Homes Int'l, Inc.*, 2003 WL 23333579 at *30. Here, all Clippinger can claim is that Audatex "knew, or should have known, of applicable Tennessee law." *See* FAC. ¶ 46. That allegation falls well short of what Tennessee law requires.

The "Tennessee law" to which Clippinger refers is Tenn. Comp. R. & Regs. R. 0780-01-05-.09(c), a regulation that explicitly only applies to insurers. *See* Tenn. Comp. R. & Regs. 0780-01-05-.02 ("This Chapter applies to all insurers or persons subject to title 56, chapter 8, part 1, that are authorized to sell, transact, or are otherwise engaged in the business of insurance in this state."). Clippinger appears to base its "knew or should have known" allegation on a line in the Audatex valuation report acknowledging that it is based on comparables "in order to meet state regulatory requirements."

9

Of course, knowing a valuation must be based on comparables is a far different matter than "knowing" that the matters about which plaintiff complains are improper under the regulations referred to above. Indeed, Audatex strongly disputes that they are. Inferring malicious intent from these facts goes well beyond the bounds of plausibility. Audatex is not, and is not alleged to be, an insurer, has no duty to comply with the Tennessee regulations at issue, disputes the "spin" plaintiff attaches to them, cannot in any event be legally imputed with knowledge of them, and no plausible facts have been alleged which support actual knowledge.

        *iii.*    *Clippinger fails to allege that Audatex's actions were the proximate cause of a breach*

Finally, Clippinger's claim for inducement of breach of contract fails because Clippinger does not allege that Audatex's actions were the proximate cause of the breach. Under Tennessee law, "Proximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005).

Not only does Clippinger fail to allege Audatex proximately caused the alleged breach, her allegations do the opposite; they focus on her insurance contract with State Farm, not on Audatex or its role in providing information to State Farm upon which it may have relied in adjusting plaintiff's claim. Audatex disputes either that State Farm breached its contract with Clippinger or that she was injured as a result. Nonetheless, her allegations focus on whether State Farm breached its contract with her and its imagined motivation for doing so, not on the secondary role Audatex played in that process. Specifically, Clippinger claims that "in 2015, 2016, and 2017, State Farm reported losing $4.4 billion, $7 billion, and $2.8 billion, respectively, in underwriting losses on its auto insurance business," (FAC ¶ 17) and that "one of the ways

10

State Farm chose to combat this trend in underwriting losses was to reduce the overall amount paid out to policyholders with covered loss claims." FAC ¶ 18. Clippinger goes on to allege that, as part of this effort to reduce its underwriting losses, State Farm underpaid her claim, breaching its contract with her as a result. FAC ¶¶ 12, 49, 51.

To be sure, Clippinger alleges that State Farm based its valuation of her vehicle, either in whole or in part, on a report obtained from Audatex. FAC ¶ 51. However, this allegation only buttresses the fact that Clippinger insured her vehicle with State Farm, not Audatex, and State Farm adjusted Clippinger's total loss. *See* FAC ¶ 2. Clippinger alleges no facts plausibly suggesting that Audatex compelled, directed, or even encouraged State Farm to use the report in a way that would, according to Clippinger, breach State Farm's contract with Clippinger. Indeed, Clippinger alleges it is part of State Farm's "general business practice," and therefore State Farm's decision, to offer its insureds an amount equivalent to the valuation in Audatex's market valuation report. FAC ¶ 30.

While Clippinger does allege that, pursuant to their contract, Audatex provides market valuation reports to State Farm (FAC ¶ 51), "it is difficult to imagine how such conduct, standing alone, could be the proximate cause of a decision" by State Farm to allegedly breach its contract with Clippinger. *Lee*, 2005 WL 123492 at *11; *id.* (affirming dismissal of tortious inference with contract claim because, among other issues, plaintiff failed to allege that defendants' acts were the proximate cause of a breach). Clippinger's failure to allege proximate cause, and her specific allegations negating that Audatex was the proximate cause of her asserted injury, is an additional, independent reason why her statutory and common law tortious interference claims fail.

11

### B. Plaintiff Fails to State a Claim Against Audatex for Declaratory Judgment

Finally, Clippinger's action for declaratory judgment should be dismissed as a matter of law. First, "The Declaratory Judgment Act is procedural in nature and 'does not create an independent cause of action' that can be invoked absent some showing of an articulated legal wrong." *Doe v. Univ. of Dayton*, 766 F. App'x 275, 291 (6th Cir. 2019). Because Clippinger's other claims should be dismissed, her "declaratory judgment claim likewise fails." *Id.*

Second, Clippinger fails to allege a justiciable controversy. Clippinger alleges that "an actual case and controversy within the meaning of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 . . . exists between Plaintiff and the proposed Class and Defendant concerning the legality of the Typical Negotiation Adjustments used by [Audatex] in its valuation reports." FAC ¶ 82. That statement is wholly unsupported by the allegations in Clippinger's First Amended Complaint. Clippinger does not, in fact, allege a dispute with Audatex regarding "the legality of the Typical Negotiation Adjustments used by [Audatex]"; rather, the only dispute with Audatex that Clippinger raised in her First Amended Complaint was whether Audatex intended to induce a breach of contract between her and State Farm. As explained above, however, there can be no dispute between Clippinger and Audatex concerning the legality of the Typical Negotiation Adjustments. The insurance regulation Clippinger claims precludes use of the Typical Negotiation Adjustments does not apply to Audatex, which is not (and is not alleged to be) a Tennessee insurer. *See supra* Part IV(A)(ii).

Clippinger likewise fails to assert a justiciable controversy because the declaration she seeks would not affect any rights or obligations between the parties. Clippinger seeks a declaration stating that:

> in valuing first-party total loss claims, it is a violation of Tennessee law to use Typical Negotiation Adjustments that are (a) arbitrary, (b) contrary to industry practices and

consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as specific as reasonably possible or appropriate as to dollar amount.

FAC ¶ 83. However, as stated above, it is State Farm, not Audatex, that values first-party loss claims for its insureds (including Clippinger); and it is State Farm, not Audatex, that is subject to Tennessee insurance regulations. As Clippinger's requested declaration would not resolve a dispute with Audatex, her First Amended Complaint fails to assert a justiciable controversy between the parties, and it must be dismissed as a matter of law.

## V.     CONCLUSION

For the reasons set forth above, Audatex respectfully asks this Court to dismiss with prejudice all claims asserted by Clippinger against Audatex.

Dated: October 27, 2020

Respectfully submitted,

/s/ Paul T. Fox
Paul T. Fox (admitted *pro hac vice*)
Kevin J. Quilty (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
77 West Wacker
Chicago, IL 60601
P (312) 456-8400
F (312) 456-8435.
foxp@gtlaw.com
quiltyk@gtlaw.com

Odell Horton Jr.
WYATT, TARRANT & COMBS LLP
6070 Poplar Avenue, Suite 300
Memphis, TN 3811
P 901-537-1082
F 901-537-1010
ohorton@wyattfirm.com

*Attorneys for Defendant Audatex North America, Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 27, 2020, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF and served upon counsel of record.

*/s/ Kevin J. Quilty*
Kevin J. Quilty
