IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JESSICA CLIPPINGER, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AUDATEX NORTH AMERICA, INC., d/b/a AUDAEXPLORE, a Delaware Corporation, <br><br> Defendant. | No. 2:20-cv-02501-TLP-atc <br><br> JURY DEMAND |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Jessica Clippinger sues Defendant Audatex North America, Inc., d/b/a AudaExplore, for inducement of breach of contract and tortious interference with the performance of a contract. (ECF No. 34 at PageID 134–36.) She also seeks a declaratory judgment. (*Id.* at PageID 137.) Defendant now moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45.) Plaintiff responded in opposition and Defendant replied. (ECF Nos. 48 & 55.)

For the reasons below, the Court **DENIES** Defendant's motion to dismiss.

**BACKGROUND**

This is a class action brought by Plaintiff on behalf of herself and all others similarly situated. (ECF No. 34 at PageID 117.) Plaintiff alleges these facts in her complaint.[1] State

---

[1] The Court accepts all of Plaintiff's allegations as true under Federal Rule of Civil Procedure 12. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing Rule 12 motion to dismiss standard).

Farm Mutual Automobile Insurance Company ("State Farm") sells automobile insurance providing coverage for property damage to an insured's vehicle. (*Id.* at PageID 121.) Plaintiff has an insurance contract with State Farm.[2] (*Id.* at PageID 120.) The contract requires State Farm to cover the total loss of her vehicle. (*Id.* at PageID 122.) State Farm may cover that loss by replacing the vehicle or giving Plaintiff the "actual cash value" of the vehicle. (*Id.*) State Farm contracts with Defendant here to help it determine "actual cash value."

Plaintiff owned a 2017 Dodge Grand Caravan SXT 2WD 4-door passenger van. (*Id.* at PageID 130.) Plaintiff had a wreck and the insurance adjuster considered it a total loss. (*Id.*) So she submitted a claim for the total loss of her vehicle, and State Farm provided a total loss valuation for her claim. (*Id.*)

Meanwhile, Defendant is a data analysis company that provides valuation reports and claims automation software to insurers, including State Farm. (*Id.* at PageID 121.) And Defendant provides State Farm with vehicle valuation reports that assess the actual cash value of a total loss vehicle. (*Id.*) So when State Farm provided a total loss valuation for Plaintiff's claim on her van, it relied on Defendant's market valuation report to determine how much to pay Plaintiff for her vehicle. (*Id.* at PageID 130.)

Plaintiff claims that Defendant purposely and wrongfully lowers the true market value of an insured's car by subtracting amounts without a proper basis. (*Id.* at PageID 118.) The Complaint alleges that Defendant "wrongfully, intentionally, and willfully interferes with State Farm's contractual duties to provide its insureds the actual cash value of their loss vehicles by providing State Farm with valuation reports that uniformly employ improper, unreasonable, and

---

[2] Plaintiff sues State Farm in a companion case, *Jessica Clippinger v. State Farm Mut. Auto. Ins. Co.*, 2:20-cv-02482 (W.D. Tenn. 2020).

unexplained adjustments to reduce the value of comparable vehicles specified in the valuation reports." (*Id.*)  And it does so by applying a "Typical Negotiation Adjustment" to lower unfairly the vehicle's market value.  (*Id.*)

In its valuation reports, Defendant gives State Farm itemized internet sales prices for vehicles comparable to the loss vehicle.  (*Id.* at PageID 125.)  But rather than using the actual price data for the comparable vehicles, Defendant applies a downward adjustment for typical negotiation costs.  (*Id.*)  On average, Defendant applies an 8.5% downward adjustment.  (*Id.* at PageID 118.)  But, according to Plaintiff, Defendant gives "no credible data or explanation to support" any negotiation adjustment, much less one at 8.5%.  (*Id.* at PageID 125.)  Plaintiff also alleges that Defendant "buries" the adjustment within the valuation report and even fails to show the dollar amount of the deduction.  (*Id.* at PageID 125–28; *see also* ECF No. 34-1.)  What is more, this typical negotiation adjustment goes against the used car industry's market pricing. (*Id.* at PageID 126.)  And for unexplained reasons, Defendant does not apply this typical negotiation adjustment when valuing total losses for State Farm in California.  (*Id.*)  Nor do Defendant's competitors typically apply this adjustment.  (*Id.* at PageID 126–27.)

In effect, Plaintiff claims that State Farm—relying on Defendant's market valuation report—pays its insureds less than the fair market cash value of their loss vehicles.  (*Id.* at PageID 128.)  As a result, Defendant helped State Farm reduce the amount it paid out to its policy holders by 8.7%.[3] (*Id.* at PageID 121–22.)  And so, Plaintiff alleges that Defendant's practice of undervaluing total loss vehicles by applying an unexplained Typical Negotiation Adjustment "induce[s] a breach of the contract between State Farm and its insureds," and

---

[3] Plaintiff alleges that, before using Defendant's services, State Farm had reported several underwriting losses on its auto insurance business.  (ECF No. 34 at PageID 121.)

intentionally interferes with State Farm's contractual relations with its insureds.  (*Id.* at PageID 135.)

Defendant now argues that Plaintiff fails to state a claim because she does not allege that Audatex "(i) specifically intended to induce State Farm to breach its contract with Clippinger, (ii) acted maliciously, or (iii) proximately caused a breach of that contract."  (ECF No. 46 at PageID 196.)

Defendant also argues that the Court should dismiss Plaintiff's declaratory judgment claim because she "fails to assert a justiciable controversy."  (*Id.* at PageID 196.)  This is because Plaintiff seeks a declaration about the duties of Tennessee insurers, which "would not affect any rights or obligations between Clippinger and Audatex."  (*Id.*)

The Court now turns to the legal standard for a 12(b)(6) motion to dismiss.

## **LEGAL STANDARD**

Courts assess whether a complaint states a claim upon which relief can be granted under the standards for Rule 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–557 (2007).  "Accepting all well-pleaded allegations in the complaint as true, the court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  To survive a motion to dismiss under 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Though a court will grant a motion to dismiss if a plaintiff has no plausible claim for relief, a court must "construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).  All in all, "[a] complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

## ANALYSIS OF TORTIOUS INTERFERENCE AND INDUCEMENT OF CONTRACT CLAIMS

Plaintiff alleges state law claims for inducement of breach of contract and tortious interference with the performance of a contract.  (ECF No. 34 at PageID 134–35).  And so the Court analyzes these claims under Tennessee law.  She bases her claims on Tennessee Code Annotated § 47-50-109 and common law principles.  (*Id.*)  Plaintiff must allege the same elements for both causes of action.  *Tennison Bros., Inc. v. Thomas*, 2014 WL 3845122, at *13 (Tenn. Ct. App. Aug. 6, 2014); *Atchley v. RK Co.*, 224 F.3d 537, 540 (6th Cir. 2000).  In fact, "Tennessee courts acknowledge that T.C.A. § 47-50-109 merely codifies Tennessee common law regarding procurement of a breach of contract, except to the extent that the statute allows for treble damages." *Atchley*, 224 F.3d at 540.

The elements of these two causes of action are "(1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract." *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997); *see also Buddy Lee*

5

*Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 354–55 (Tenn. Ct. App. 1999). "A complaint for tortious interference with contract must do more than simply parrot the legal elements of the cause of action." *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005).  In other words, "a complaint alleging tortious interference with the performance of a contract must also allege specific facts that, if true, would support each of the seven elements of the tort." *See id.*

Defendant argues that Plaintiff does not state a claim here because she "does not allege any facts, let alone plausible facts, that Audatex (i) specifically intended to induce State Farm to breach its contract with Clippinger, (ii) acted maliciously, or (iii) proximately caused a breach of that contract." (ECF No. 46 at PageID 196.)  The Court now considers whether Plaintiff alleges enough to state a claim for Defendant's malicious intent to induce a breach of contract.

**I.      Intent and Malice Requirements**

The Court finds that Plaintiff has pleaded Defendant's malicious intent.  To show intent to induce another to breach a contract, a plaintiff must show "that the wrongdoer either desired his act to cause a breach or was substantially certain that his actions would result in one." *Nave v. Life Bank*, 334 B.R. 586, 595 (M.D. Tenn. 2005) (citing *Mix v. Miller*, 27 S.W.3d 508, 515 (Tenn. Ct. App. 1999)); *JIT Concepts, Inc. v. Shelby Cnty. Healthcare Corp.*, 358 F. Supp. 2d 678, 686 (W.D. Tenn. 2005) (quoting Stephen W. Feldman, *Tortious Interference with Contract in Tennessee: A Practitioner's Guide*, 31 U. Mem. L. Rev. 281, 301 (2001)).

And to show malice, the plaintiff must allege the defendant's "willful violation of a known right." *Prime Co. v. Wilkinson & Snowden, Inc.*, No. W2003-00696-CA-R3CV, 2004 WL 2218574, at *4 (Tenn. Ct. App. Sept. 30, 2004) (quoting *Crye-Leike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-00287, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998)).

This means that Plaintiff must allege that Defendant's actions were "intentional and without legal justification," or in other words, that Defendant acted "for the indirect purpose of injuring the plaintiff *or* benefiting the defendant at the plaintiff's expense." *Crye-Leike Realtors, Inc.*, 1998 WL 651623, at *6 (internal quotations omitted). Knowledge of a contract alone is not enough to show intent or malice. Knowledge "may be a factor relevant to the question of intent, but simple knowledge of the contract cannot be automatically equated with intent to induce a breach." *Keith v. Aerus, LLC*, No. 2:09-CV-297, 2010 WL 3883434, at *6 (E.D. Tenn. Sept. 29, 2010).

### A. Plaintiff Alleges Defendant's Knowledge of the Contract

Plaintiff sufficiently alleges that Defendant knew of State Farm's contracts with its insureds. Plaintiff claims that Defendant "knew, by virtue of contracting to provide valuation reports to State Farm for use in valuing first-party total loss claims, that valid contracts existed between State Farm and its insureds." (ECF No. 34 at PageID 135.) What is more, Plaintiff's valuation report shows Defendant's knowledge of her contract with State Farm. For example on page 6 of the report, it references not only State Farm but Plaintiff's name and her claim number. (ECF No. 34-1 at PageID 147.) Though Defendant completes the valuation report for State Farm, it contemplates State Farm's contract with the insured. In that regard, the valuation report says that "State Farm Insurance has selected Audatex, an independent vehicle valuation company, to prepare a comprehensive vehicle valuation for your vehicle," and that the report "was prepared specifically for your vehicle." (*Id.* at PageID 142.) So based on Plaintiff's allegations, the Court finds it plausible that, when it created its valuation reports, Defendant knew a contract existed between State Farm and Plaintiff.

But does she allege that Defendant knew about State Farm's contractual obligation to pay Plaintiff the actual cash value of her vehicle, and that Defendant knowingly and maliciously induced State Farm to breach that provision of the contract?[4] Reading the facts in the light most favorable to Plaintiff, the Court finds that she does.

### B.     Plaintiff Alleges Malicious Intent

To establish intent, Plaintiff must allege facts showing that Defendant "desired his act to cause a breach or was substantially certain that his actions would result in one." *Nave*, 334 B.R. at 595. And to show malice, she must allege that Defendant willfully violated "a known right." *Prime Co.*, 2004 WL 2218574, at *4.

Though it is a close call, Plaintiff's allegations pass muster here. Those allegations suggest that Defendant acted with the required intent and malice. Plaintiff alleges that Defendant "provided State Farm with valuation reports that *it knew to be contrary to applicable policy terms* and state law." (ECF No. 34 at PageID 128 (emphasis added).) These allegations, accepted as true, claim that, by providing the valuation reports to State Farm, Defendant "was substantially certain that [its] actions would result" in a breach of contract. *Nave*, 334 B.R. at 595. Plus Plaintiff alleges that Defendant "acted intentionally and willfully in providing valuation reports to State Farm that include inappropriate, unreasonable, and nonspecific Typical Negotiation Adjustments for the intended purpose of artificially reducing the values of

---

[4] Defendant argues that Plaintiff has not shown intent because she claims that Audatex knew, or should have known, about Tenn. Comp. R. & Regs. 0780-01-05-09, which only applies to insurers. (*See* ECF Nos. 55; 46 at PageID 203.) Plaintiff, however, argues that the right at issue is Plaintiff's contractual right to receive the actual cash value of their loss vehicles under their contracts with Sate Farm. (ECF No. 48 at PageID 234.) Her allegations support this interpretation. (*See* ECF No. 34 at PageID 128.) So reading the complaint in the light most favorable to Plaintiff, the Court considers whether Defendant intended to induce State Farm to breach the contract terms, not Tenn. Comp. R. & Regs. 0780-01-05-09.

8

comparable vehicles in violation of the insurance policy terms and Tennessee law." (ECF No. 34 at PageID 136.) Plaintiff has therefore alleged intent here.

She also alleges malice. A plaintiff can establish malice by alleging that the defendant interfered with a contract "for the indirect purpose of injuring the plaintiff *or* benefiting the defendant at the plaintiff's expense." *Crye-Leike Realtors, Inc.*, 1998 WL 651623, at *6. And Plaintiff in this case alleges that Defendant had a financial interest in undervaluing State Farm's total loss claims. (ECF No. 34 at PageID 122.) Plaintiff's complaint alleges that State Farm wanted to reduce the amount paid to policyholders on total loss claims to "combat [its] trend in underwriting losses,". (*Id.* at PageID 121.) And so, Plaintiff claims that "AudaExplore endeavored to supply State Farm with valuation reports" that reduced the value of comparable vehicles, and in turn reduced State Farm's payments to insureds. (*Id.* at PageID 121–22.) To this she adds, "[b]y creating a valuation system that uniformly and consistently reduces the amounts paid out on total loss claims, AudaExplore has made its valuation service more attractive to State Farm because the valuation system directly benefits the insured." (*Id.* at PageID 122.)

What is more, Plaintiff alleges that Defendant "buries" the typical negotiation adjustment in the valuation report; provides no data or explanation for the adjustment; and that Defendant's competitors do not apply typical negotiation adjustments. (ECF No. 34 at PageID 125–28.) These allegations support Plaintiff's contention that Defendant knew its valuation reports violated policy terms and state law, and that it acted with malicious intent.

The allegations here are like those in *Boncic v. Permanent General Assurance Corp.*, No. CIV-19-23-SLP, 2019 WL 3311218, at *4 (W.D. Okla. July 23, 2019). The court there found that the plaintiff's complaint alleged malicious intent when the plaintiff alleged that "Audatex,

9

through its software program, intentionally used non-comparable vehicles, intentionally applied a typical negotiation deduction resulting in the undervaluation of the comparator vehicles, and intentionally obscured how the conditions of a vehicle are evaluated to adjust the vehicles market value, all with the eventual purpose of misleading insureds regarding the values of their vehicles." *Id.* As discussed above, Plaintiff makes similar allegations that Defendant applied the Typical Negotiation Adjustment "for the intended purpose of artificially reducing the values of comparable vehicles in violation of the insurance policy terms and Tennessee law." (ECF No. 34 at PageID 136.)

And similarly in *Williams v. Progressive County Mutual Insurance Co.*, the plaintiff alleged that the valuation company "had knowledge of the contract and the provision regarding Texas law." No. 17-cv-2282-AJB-BGS, 2019 WL 1418057, at *2 (S.D. Cal. Mar. 29, 2019). This made it "at least plausible" that the valuation company knew of the policy between the insurance company and the plaintiff. *Id.* Likewise, Plaintiff alleges that Defendant knew of State Farm's contracts and of the provisions about Tennessee law. (ECF No. 34 at PageID 118, 123, & 128.) Finally, the court in *Richardson v. Progressive American Insurance Co.* found that the plaintiffs alleged the valuation company's malicious intent by alleging that the valuation company "had knowledge that [the insurance company] entered into insurance policies with its insureds and that defendants acted intentionally." No.2:18-cv-715-FtM-99MRM, 2019 WL 2287955, at *6 (M.D. Fla. May 29, 2019). And that is exactly what Plaintiff alleged here.

Defendant also argues that "at most," Plaintiff alleges that Defendant "enabled" State Farm to pay insureds less than the actual cash value of their insureds, and that "such allegations do not support a claim for inducement to breach a contract." (ECF No. 46 at PageID 201.) But Plaintiff's allegations do more than just suggest that Defendant "enabled" State Farm to use the

10

market valuation reports. *See Walker v. Allstate Property & Casualty Ins. Co.*, No. 2:19-CV-701-RDP, 2020 WL 1235626, at *7 (finding that "enabling" insurance company "to use the market valuation reports is not the same as [defendant] intentionally interfering with the Policy" failed to state a claim for intentional interference). Indeed, she alleges that Defendant "knowingly and intentionally provid[ed] valuation reports to State Farm . . . for the intent purpose of artificially reducing the values of comparable vehicles." (ECF No. 34 at PageID 124.)

All in all, Plaintiff sufficiently alleges Defendant's intent and malice. The Court now discusses whether she has alleged proximate causation.

## II. Plaintiff Alleges Proximate Causation

Defendant also argues that Plaintiff fails to allege that Defendant proximately caused State Farm's breach of contract. (ECF No. 46 at PageID 204.) "Proximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005). Tennessee courts apply a three-prong test to determine whether there is proximate cause: "(1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the [tortious conduct] has resulted in the harm; and (3) the harm giving rise to the action have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *Id.* (quoting *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994)).

Defendant argues that Plaintiff's allegations do not show proximate causation, because State Farm insured her vehicle, and State Farm adjusted Plaintiff's total loss—not Defendant. (ECF No. 46 at PageID 205.)  It argues that "Clippinger alleges no facts plausibly suggesting that Audatex compelled, directed, or even encouraged State Farm to use the report in a way that would, according to Clippinger, breach State Farm's contract with Clippinger." (*Id.*)  In fact, Defendant points out that it is "State Farm's decision" to offer insureds the amount specified in Defendant's market valuation report. (*Id.*)

But to show proximate cause, Plaintiff need not allege that Defendant compelled or directed State Farm to breach its contract with its insureds.  Instead, she must only allege that Defendant's conduct was a "substantial factor in bringing about the harm" and that the alleged harm was reasonably foreseeable.  *See Hale v. Ostrow*, 166 S.W.3d at 719.  And she does so here.

Plaintiff alleges that, "[b]y preparing and providing valuation reports to State Farm that violated Tennessee law and constituted a breach of contract between State Farm and its insureds, AudaExplore proximately caused injury [to] State Farm's insureds." (ECF No. 34 at PageID 136.)  And she claims that, "[a]s a general business practice, State Farm offers its insureds a claim amount equivalent to the valuation of the loss vehicle that is specified in the market valuation report prepared by AudaExplore," (*Id.* at PageID 125.)  So reading the facts in the light most favorable to Plaintiff, it was reasonably foreseeable that State Farm would rely on Defendant's valuation reports and offer insureds the amount identified in the report.

At the 12(b)(6) motion to dismiss stage, the Court accepts all of Plaintiff's allegations as true under Federal Rule of Civil Procedure 12.  *See Directv, Inc.*, 487 F.3d at 476.  The motion to dismiss standard is "relatively low," and the complaint need not contain detailed factual

12

allegations. *McKinney v. Microsoft Corp.*, No. 1:10-cv-354, 2011 WL 13228197, at *7 (S.D. Ohio Sept. 26, 2011) (citing *Iqbal*, 556 U.S. at 678). To be sure, discovery may show that there is little evidence supporting Plaintiff's factual allegations. But it may also show that Defendant and State Farm intentionally worked together to undervalue insureds' total loss claims. All in all, the Court finds that Plaintiff's complaint "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In the end, the Court **DENIES** Defendant's motion to dismiss Plaintiff's tortious interference and inducement of contract claims.

## ANALYSIS OF DECLARATORY JUDGMENT CLAIM

Plaintiff seeks a declaratory judgment that, "in valuing first-party total loss claims, it is a violation of Tennessee law to use Typical Negotiation Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as specific as reasonably possible or appropriate as to dollar amount." (ECF No. 34 at PageID 137.) Defendant argues that the Declaratory Judgment Act does not create an independent cause of action, so if Plaintiff's tort claims fail, so does her declaratory judgment claim. (ECF No. 46 at PageID 206.) And it argues that Plaintiff "fails to allege a justiciable controversy," because she seeks a declaration about the duties of Tennessee insurers, which "would not affect any rights or obligations between Clippinger and Audatex." (*Id.*)

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as the controversy is within the court's jurisdiction. 28 U.S.C. § 2201. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal

13

courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

The Court denies Defendant's motion for two reasons.  First, the Court found that Plaintiff sufficiently alleged her tort claims.  And second, at this point Plaintiff must only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Plus allowing declaratory relief is in the Court's discretion.  *Wilton*, 515 U.S. at 286.  With that in mind, the Court finds that Plaintiff has adequately alleged that she is entitled to declaratory relief to overcome a motion to dismiss.  The Court thus **DENIES** Defendant's motion to dismiss Plaintiff's declaratory judgment claim.

## CONCLUSION

Plaintiff alleges a claim upon which relief can be granted.  The Court thus **DENIES** Defendant's motion to dismiss Plaintiff's complaint.

**SO ORDERED**, this 6th day of May, 2021.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE